UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

JOSEPH OPPERISANO,

                              Plaintiff,                 **MEMORANDUM & ORDER**
                                                         16-CV-3940 (MKB)
               v.

P.O. JONES, P.O. MEDINA and P.O. DELUCA,
Brooklyn Parole Office,

                              Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Joseph Opperisano, currently incarcerated at Mid-State Correctional Facility,[1]

commenced the above-captioned action on June 2, 2016,[2] pursuant to 42 U.S.C. § 1983 against

Defendants the New York Division of Parole,[3] Andrea Evans, Chairperson of the New York

State Board of Parole ("Board of Parole"), and Parole Officers Jones, Medina, and Deluca, of the

---

[1] According to the New York State Department of Corrections and Community
Supervision ("DOCCS") inmate lookup information, Plaintiff is currently incarcerated at Mid-
State Correctional Facility. *See* New York State DOCCS "Inmate Lookup"
http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited February 2,
2018). The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information
without converting the motion to dismiss to a motion for summary judgment. *See Johnson v.
City of New York*, No. 15-CV-8195, 2017 WL 2312924, at *2 (S.D.N.Y. May 26, 2017)
(collecting cases).

[2] The Court applies the prison mailbox rule instead of the date the petition was received
by the Court. *See Houston v. Lack,* 487 U.S. 266, 276 (1988) (holding that a prisoner's *pro
se* papers were filed at the "time petitioner delivered it to the prison authorities for forwarding to
the court clerk")

[3] New York Department of Correctional Services and the New York Division of Parole
have merged to form a new entity, DOCCS. *See Santiago v. Fischer*, No. 09-CV-1383, 2017
WL 4349378, at *1 (E.D.N.Y. Sept. 29, 2017).

Brooklyn Parole Office.[4]  By Memorandum and Order dated January 25, 2017 ("January  2017

Decision"), the Court *sua sponte* dismissed Plaintiff's claims against the New York Division of

Parole and Evans.  (*See* January 25, 2017 Decision, Docket Entry No. 15.)  Defendant Jones now

moves to dismiss the claim against her pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  (Def. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 33; Def. Mem. in Supp. of

Def. Mot. ("Def. Mem."), Docket Entry No. 34.)  Plaintiff does not oppose the motion.[5]  For the

reasons discussed below, the Court grants Jones' motion and dismisses Plaintiff's claim against

Jones with prejudice.

**I.  Background**

> **a.  Factual background**

The Court assumes familiarity with the facts as detailed in the January 2017 Decision and

provides a summary of only the pertinent facts.  (*See* January 2017 Decision.)  For purposes of

this motion, the facts alleged in the Complaint are assumed to be true.

Plaintiff was released from prison in 2010 and moved into his family's home located in

Brooklyn, New York.  (Compl. 6.)  Plaintiff's wife also resided at his family's home.  (*Id.*)  In

2011, Plaintiff had a "verbal argument" with his wife that resulted in his wife obtaining an order

of protection against him, which prohibited him from residing with her.  (*Id.*)  The day after

Plaintiff's wife obtained the order of protection, Jones, Plaintiff's then-parole officer, told

---

[4]  Plaintiff does not specify the first names of the parole officer defendants.

[5]  Plaintiff filed his Complaint *pro se*, but retained counsel on March 30, 2017.  (*See*
Compl., Docket Entry No. 1; Notice of Appearance by Pamela Susan Roth on behalf of Plaintiff,
Docket Entry No. 23.)  On June 12, 2017, the Court adopted the parties' proposed briefing
schedule.  (Order dated June 12, 2017.)  Pursuant to the schedule, Plaintiff's opposition brief to
Jones' motion was due on August 10, 2017.  On December 21, 2017, Judge Bloom granted
Plaintiff until January 22, 2018 to oppose the motion.  (Order dated December 21, 2017.)
Plaintiff failed to submit any briefing by the extended deadline.

Plaintiff that, despite the order of protection, he could reside in an upstairs apartment with his parents while his wife lived in the basement apartment of the same building. (*Id.*) At some point thereafter, Plaintiff was arrested for violating the order of protection and served 365 days at the Greenburg Correctional Facility. (*Id.*) After his release in 2012, Plaintiff violated the terms of his release on two separate occasions, resulting in parole revocations in 2014 and 2016. (*Id.* at 9, 11.) Although Plaintiff challenges all three revocations, Jones was not involved in the latter two revocations. (*See id.*)

Plaintiff alleges that Jones violated his due process rights by allowing him to reside at the family home, putting him at risk of violating the conditions of his parole. (*Id.* at 5, 9.) He asserts that by failing to adequately assess the risks involved, Jones failed to follow the proper procedures required in selecting a "suitable place" of residence for a parolee. (*Id.* at 8.) Plaintiff seeks $15 million in damages for psychological and emotional damage, lost wages and loss of family time with his parents and child.[6] (*Id.* at 5.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord*

---

[6] Based on the record before the Court, it appears that Plaintiff's sentence for his underlying conviction was set to expire on November 9, 2016. (*Id.* at 10.) However, Plaintiff remains incarcerated. Neither party has addressed this issue. The Court takes judicial notice of the DOCCS inmate lookup information. *See* New York State DOCCS "Inmate Lookup" http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited February 2, 2018). According to the inmate lookup information, Plaintiff appears to be serving time for offenses unrelated to the conviction at issue in this case. (*Compare* Department Identification Number 04R081 (listing Robbery in First Degree as crime of conviction) *with* 17R2428 (listing Criminal Possession of Weapon in the Third Degree, Criminal Contempt in the First Degree, and Aggravated Family Offense as crimes of conviction.)

*Assocs., L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

"In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency.'" *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). "[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall*, 232 F.3d at 322. Therefore, a "plaintiff's failure to respond to a 12(b)(6) motion does not warrant dismissal" "[i]f a complaint is sufficient to state a claim on which relief can be granted." *Id.* at 323.

### b. Plaintiff's claim against Jones is barred by *Heck v. Humphrey*

Jones argues that *Heck v. Humphrey*, 512 U.S. 477 (1994), requires dismissal of the action against her because Plaintiff's claim would necessarily imply the invalidity of his 2012

parole revocation.  (*See* Def. Mem. 5.)

An individual convicted of a crime may not bring a section 1983 suit for damages that "necessarily impl[ies] the invalidity of his conviction or sentence . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated."  *Heck*, 512 U.S. at 487; *Shapard v. Attea*, 710 F. App'x 15, 17 (2d Cir. Oct. 12, 2017); *Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017); *see also Spencer*, 523 U.S. 1, 17 (1998) (discussing that plaintiffs may seek damages for "'wrong procedures, [but] not for reaching the wrong result,' [so long as that] procedural defect did not 'necessarily imply the invalidity of' the revocation" (quoting *Heck*, 512 U.S. at 482–83, 487).

*Heck*'s limitation of section 1983 claims has come to be known as the "favorable-termination" rule and applies to revocations of parole.  *See Victory v. Pataki*, 632 F. App'x 41, 44 (2d Cir. 2016) (finding "*Heck*'s . . . favorable termination requirement" to be satisfied); *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to prevent a state prisoner from bringing a [s]ection 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside."); *but see Miner v. Goord*, 354 F. App'x 489, 491 (2d Cir. 2009) (holding section 1983 claim challenging parole revocation was not barred by *Heck*'s favorable termination rule because plaintiff had "completed his term of imprisonment").

A parolee challenging a parole revocation must therefore demonstrate that his parole revocation has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. at 486–87; *Brannon v. 73rd Precinct*, No. 15-CV-0072, 2016 WL 8711204, at *2 (E.D.N.Y. Apr. 15, 2016) ("[P]laintiff's 42

U.S.C. § 1983 claim regarding the revocation of his parole is barred by *Heck* because his parole revocation has not been reversed, expunged, or declared invalid." (citation omitted)); *Praileau v. New York*, No. 17-CV-836, 2017 WL 6033738, at *5 (N.D.N.Y. Nov. 8, 2017) ("[T]o the extent plaintiff may be arguing that the parole revocation, and, thus, his incarceration following the arrest for parole violations was improper, '[s]ince [p]laintiff has not established that the parole revocation has been invalidated . . . [p]laintiff cannot assert a [section] 1983 claim as an improper collateral attack upon the validity of his . . . parole revocation.'" (citation omitted)), *report and recommendation adopted*, No. 17-CV-836, 2017 WL 6033420 (N.D.N.Y. Dec. 5, 2017).

### i. *Spencer* and the limitation of *Heck*'s favorable termination rule

There remains substantial dispute as to the applicability of *Heck*'s favorable termination requirement to an individual who is not "in custody"[7] within the meaning of habeas under federal law, or otherwise cannot obtain federal habeas relief. *See Teichmann v. New York*, 769 F.3d 821,

---

[7] "In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be in custody . . . ." *Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) (first quoting 28 U.S.C. § 2254(a); and then citing *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989)). For challenges to an *underlying conviction*, courts have found petitioners to be "in custody" for purposes of habeas not only when they are incarcerated but also when they are on parole or supervised release. *See Dearstyne v. Mazzuca*, 679 F. App'x 21, 22 (2d Cir. 2017) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). However, petitioners challenging their *parole revocation* would not appear to be "in custody" for purposes of habeas after release on parole. *See Maleng*, 490 U.S. 488, 490–91 ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' *under the conviction or sentence under attack at the time his petition is filed*." (emphasis added)). Indeed, in *Spencer v. Kemna*, 523 U.S. 1, 7 (1998), the Supreme Court held that the petitioner was in custody for purposes of 28 U.S.C. § 2254 because he "was *incarcerated* by reason of the parole revocation at the time the petition was filed." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (emphasis added); *Van Zant v. Florida Parole Comm'n,* 104 F.3d 325 (11th Cir. 1997) (inmate not "in custody" for section 2241 purposes once he has been released from incarceration resulting from parole revocation); *see also Maleng*, 490 U.S. at 491 (holding that a petition is not "'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed.").

6

828 (2d Cir. 2014); *Heck*, 512 U.S. at 500 ("[State prisoners] not 'in custody' cannot invoke federal habeas jurisdiction, the only statutory mechanism besides § 1983 by which individuals may sue state officials in federal court for violating federal rights."). Read literally, *Heck*'s holding bars all section 1983 damages claims where the underlying conviction, sentence, or parole revocation has not or cannot be invalidated. *Heck*, 512 U.S. at 477. However, in his concurrence in *Heck*, Justice Souter cautioned against such a broad interpretation of the majority holding. *Id.* at 500. Justice Souter reasoned that to do so would "deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling," namely, "people who were merely fined . . . or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences." *Id.* Because of the disputed state of the law in the Second Circuit, the Court discusses the historical development of the law.

In *Spencer*, decided four years after *Heck*, Justice Souter garnered four votes for his concurrence which expanded upon his reasoning in *Heck*. *Spencer*, 523 U.S. at 21. At issue was whether a habeas challenge to a parole revocation had been rendered moot upon the petitioner's release from custody. *Id.* at 7. The petitioner argued his petition was not moot, in part, because he would not otherwise be able to pursue a section 1983 damages action pursuant to *Heck*'s favorable-termination rule. *Id.* at 17. Although the majority did not reach this issue, Justice Souter believed the argument to be "wrong." *Id.* at 18–19. Justice Souter explained that a person "no longer 'in custody,' may bring a [section] 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21. Accordingly, Justice Souter reasoned that "[a]fter a prisoner's release from custody, the

habeas statute and its exhaustion requirement have nothing to do with his right to any relief." *Id.*
Although the concurrence received only four votes, Justice Stevens, in dissent, agreed with Judge
Souter's reasoning in a footnote. *See id.* at 25 n.8 ("Given the Court's holding that petitioner
does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains,
that he may bring an action under 42 U.S.C. § 1983."). By aggregating the votes for the
concurrence and dissent in *Spencer*, several "Circuits have . . . held that *Spencer's dicta* allows
courts to recognize unusual and compelling circumstances in which *Heck*'s holding does not
absolutely foreclose a claim." *Poventud v. City of New York*, 750 F.3d 121, 164 (2d Cir. 2014)
("*Poventud II*") (Jacobs, J., dissenting) (citations omitted); Abner Mikva, *The Scope of Equal
Protection*, 2002 U. Chi. Legal F. 1, 8 ("[A]s the late Justice Brennan used to say, the first rule of
the Supreme Court is that you have to be able to count to five."). However, "[s]everal [other]
Circuits have concluded that the *Spencer* concurrences cannot override *Heck's* binding
precedent." *Poventud II*, 750 F.3d at 163.

### ii. Second Circuit's adoption of an exception to *Heck*'s favorable-termination rule

The Second Circuit has joined the majority of Circuits in rejecting the interpretation that
*Heck* serves as an absolute bar against *all* section 1983 damage claims where the underlying
conviction, sentence, or parole revocation has not, and cannot be invalidated. *See Huang ex rel.
Yu v. Johnson*, 251 F.3d 65 (2d Cir. 2001); *Green v. Montgomery*, 219 F.3d 52 (2d Cir. 2000);
*Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999); *Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999).

The Second Circuit analyzed the application of both *Heck* and *Spencer* for the first time
in *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999). In *Jenkins*, a state inmate brought a section
1983 damages action challenging the adequacy of two prison disciplinary hearings through
which he was sentenced twice to thirty-days in administrative segregation. *Id.* at 21. The

Second Circuit allowed the section 1983 claim to proceed and based its reasoning on the conclusion that *Heck*'s favorable-termination did not apply because the "suit [was] properly characterized as a challenge to the conditions of . . . confinement, rather than as a challenge to the fact or duration of . . . confinement." *Id.* The panel also stated that "to apply the *Heck* rule in such circumstances would contravene the pronouncement of five justices [making up the concurrences and dissent in *Spencer*] that some federal remedy — either habeas corpus or § 1983 — must be available." *Id.* at 27.

In *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999), relying on *Jenkins*, although published on the same day, the Second Circuit allowed a section 1983 damages claim to proceed where the claimant had *never* been in custody and only "assessed a $300 fine as well as a $25 surcharge," and the suspension of a driver's license for 90 days. The Second Circuit reasoned that the claimant, "like [in] *Jenkins*, ha[d] no remedy in habeas corpus" because he "never was in custody of the State." *Id.*

A month after *Jenkins* was decided, in *Green v. Montgomery*, 219 F.3d 52, 61 n.3 (2d Cir. 2000), the Second Circuit explained in dicta that "*Heck* acts only to bar [section] 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody)." On appeal, the defendants in *Green* asserted a defense based on *Heck*'s favorable-termination rule in addition to the collateral estoppel grounds on which the district court granted their motion for summary judgment. *Id.* Although the case ultimately turned on other grounds, the Second Circuit reasoned that "[b]ecause it d[id] not appear that [the claimant was] presently in state custody, his [section] 1983 action [was] not barred by *Heck*." *Id.*

Subsequently in *Huang ex rel. Yu v. Johnson*, 251 F.3d 65, 66 (2d Cir. 2001), the Second Circuit allowed a section 1983 damages claim to proceed where the plaintiff alleged that New

York state correctional officers violated her son's constitutional rights, resulting in the illegal custody of her son for eighty-three days. Despite the challenge to the duration of confinement,[8] the Second Circuit reasoned that because plaintiff's son "ha[d] no habeas remedy because he ha[d] long been released from . . . custody," *Leather* and *Spencer* required the section 1983 claim to proceed. *Id.*

### iii. The scope of the exception to *Heck*'s favorable-termination rule in the Second Circuit

Despite the unanimity of *Jenkins*, *Leather*, *Green*, and *Huang* in their adoption of the reasoning in *Spencer*, dispute remains in the Second Circuit as to the scope and limits of the exception to *Heck*'s favorable-termination rule. *See Kroemer v. Tantillo*, No. 17-CV-67, 2017 WL 6409147, at *7 n.10 (W.D.N.Y. June 16, 2017) ("[T]here is a deep circuit split as to the applicability of *Heck* when the plaintiff is no longer in custody." (citing *Teichman v. New York*, 769 F.3d 821, 828 (2d Cir. 2014) (Calabresi, J., concurring)).

In *Poventud v. City of New York*, the panel adopted the broadest interpretation of the exception possible, creating a bright-line rule based on custody. *Poventud v. City of New York*, 715 F.3d 57, 60 (2d Cir. 2013) ("*Poventud I*"), *on reh'g en banc*, 750 F.3d 121 (2d Cir. 2014). The panel explained that the Second Circuit had "repeatedly affirmed that *Heck*'s favorable-termination requirement applies only to plaintiffs who are in custody, and that all other claimants — those who have no remedy in habeas — may pursue their claims under § 1983." *Id.* at 61. Following the panel decision, the Second Circuit voted to rehear the case *en banc* in order to

---

[8] A few authorities suggest that some significance may be attached to the fact that the plaintiff in *Huang* challenged the "duration of [her son's] confinement, [but] . .. not . . . the validity of [her son's] conviction." *Huang*, 251. F.3d at 66; *see* John P. Collins, *Has All Heck Broken Loose? Examining Heck's Favorable-Termination Requirement in the Second Circuit After Poventud v. City of New York*, 42 Fordham Urb. L.J. 451, 496 (2014) ("Indeed, some lower courts have construed *Huang's* holding to be more limited than it may appear on its face.").

address, in part, the reasoning as to the scope of the *Heck* exception. *Poventud II*, 750 F.3d at 124. However, on rehearing, the Second Circuit declined to address the scope of the exception, affirming the claimant's right to pursue his section 1983 claim on the grounds that his challenge did not necessarily imply the invalidity of his conviction. *Id.* at 127. Nevertheless, the Second Circuit vacated the panel decision including its reasoning as to the scope of the exception. *Id.*; *see also Artec Constr. & Dev. Corp. v. City of New York*, No. 15-CV-9494, 2017 WL 5891817, at *5 (S.D.N.Y. Nov. 28, 2017) (noting *Poventud II* "narrow[ed]" the *Heck* exception as provided in *Poventud I*).

Given the lack of clarity provided by the Second Circuit in *Poventud II*, in *Teichmann v. New York*, 769 F.3d 821, 828 (2d Cir. 2014), in dismissing a section 1983 damages claim for failure to state a claim, Judges Calabresi and Livingston offered their interpretations of Second Circuit precedent regarding *Heck*'s favorable-termination rule. Judge Calabresi synthesized *Jenkins*, *Leather*, *Green*, and *Huang* to mean that that "*Heck* does not bar [section] 1983 claims when habeas is unavailable, at least so long as the unavailability was not *intentionally* caused by the plaintiff." *Id.* at 830 (emphasis added). However, Judge Calabresi did not explain his meaning of the term "intentionally."[9] *Id.* at 828 (questioning the meaning Judge Calabresi attached to the term "intentionally") (Livingston, J., concurring). In contrast to Judge Calabresi's broad reading of the exception to *Heck*, at least as discussed in *Poventud I*, Judge Livingston expressed that the Second Circuit had "recognized an exception to *Heck*'s favorable termination requirement when habeas was *never* reasonably available to the plaintiff through no lack of diligence on [plaintiff's] part — that is, where an action under § 1983 was a diligent

---

[9] Judge Calabresi authored *Poventud I*, the panel opinion that seemingly allowed section 1983 claims to proceed whenever a claimant is no longer in custody.

plaintiff's only opportunity to challenge his conviction in a federal forum." *Id.* at 828 (citing *Leather*, 180 F.3d at 424) (Livingston, J., concurring).

Because of this lack of clarity, district courts within the Second Circuit have reached different conclusions as to whether a claimant may bring a section 1983 damages claim when the claimant is no longer in custody or otherwise cannot bring a habeas action. Many district courts routinely allow section 1983 claims to proceed whenever habeas relief is unavailable without considering the diligence of the claimant. *See, e.g., Morgan v. City of New York*, No. 15 CV 3899, 2017 WL 6561161, at *4 (E.D.N.Y. Dec. 22, 2017) ("And *Heck* does not bar actions commenced by plaintiffs no longer in custody." (citing *Huang*, 251 F.3d at 74–75)); *Jeanty v. City of Utica*, No. 16-CV-00966, 2017 WL 6408878, at *4 (N.D.N.Y. Aug. 18, 2017) ("[I]f the plaintiff is no longer in custody and habeas is consequently unavailable, the *Heck* doctrine no longer applies to bar a claim which undermines the plaintiff's conviction." (first citing *Spencer*, 523 U.S. at 21; and then citing *Teichman*, 769 F.3d at 829–30 (Calabresi, J., concurring); and then citing *Poventud I*, 750 F.3d at 60)); *John v. Lewis*, No. 15-CV-5346, 2017 WL 1208428, at *7 (E.D.N.Y. Mar. 31, 2017) ("It is Second Circuit law that a plaintiff not in State custody, who thus does not have a *habeas corpus* remedy available, may bring a [section] 1983 action, even if a successful claim would 'necessarily imply the invalidity of his conviction.'" (citing *Leather*, 180 F.3d at 424)); *Hardy v. Fischer*, 701 F. Supp. 2d 614, 620 n.6 (S.D.N.Y. 2010) ("The Court recognizes that *Heck*'s favorable termination requirement does not bar plaintiffs who are not in custody — and thus have no remedy through habeas relief from seeking relief pursuant to section 1983." (citing *Huang*, 251 F.3d at 74–75)).

Others, have adopted Judge Livingston's narrower position. *See Webster v. Himmelbach*, 271 F. Supp. 3d 458, 469 (W.D.N.Y. 2017) ("[I]f the habeas remedy is a reasonable and practical

option, a plaintiff's failure to diligently seek out this avenue of relief prevents a subsequent assertion of the *Jenkins/Leather* exception."); *Artec*, 2017 WL 5891817, at *5 ("[The Second] Circuit . . . recognizes an exception to the favorable termination requirement where a plaintiff . . . was never in state custody, 'that is, where an action under § 1983 was a diligent plaintiff's only opportunity to challenge his conviction in a federal forum.'" (quoting *Teichman*, 769 F.3d at 828 (Livingston, J., concurring)); *Jean-Laurent v. Cornelius*, No. 15-CV-2217, 2017 WL 933100, at *6 (S.D.N.Y. Mar. 8, 2017) (explaining *Heck* would not have barred plaintiff's section 1983 claim because he "'did not have the practical ability to pursue habeas relief' from his fifteen day sentence" (first quoting *Sanders v. Williams*, No. 14-CV-7210, 2015 WL 7963135, at *5 (S.D.N.Y. Nov. 10, 2015), *report and recommendation adopted*, No. 14-CV-7210, 2015 WL 8073810 (S.D.N.Y. Dec. 4, 2015); and then citing *Teichmann*, 769 F.3d at 828 (Livingston, J., concurring), *appeal dismissed*, No. 17-CV-1313, 2017 WL 5054220 (2d Cir. Sept. 13, 2017)); *Sanders*, 2015 WL 7963135, at *5 n.2 (explaining *Heck* did not apply because "plaintiff did not have the practical ability to pursue habeas relief for his thirty-day sentence"); *Scott v. City of White Plains*, No. 10-CV-1887, 2012 WL 1267873, at *3 (S.D.N.Y. Apr. 10, 2012) ("An exception to *Heck* applies . . . if a plaintiff 'was never confined or was in confinement for so brief a time that filing a habeas petition was impracticable.'" (citations omitted)).

This Court adopts Judge Livingston's interpretation of Second Circuit precedent — referred to as the "*Jenkins/Leather* exception" by at least one district court. As Judge Livingston explained, even if *Poventud II* did not "disturb[] certain precedents," the panel decision and its broad articulation of access to section 1983 claims were vacated. *Teichmann*, 769 F.3d at 827. Moreover, Judge Calabresi's understanding of Second Circuit precedent appears to be consistent with that of Judge Livingston. *See Teichmann*, 769 F.3d at 830 (citing 10th Circuit and 9th

Circuit case law discussing lack of diligence or timely pursuit in support of proposition that other Circuits have held *Heck* bars section 1983 claims for *intentional* default of habeas claims). At the very least, Judge Calabresi acknowledged that no Circuit court, *including* the Second Circuit, has yet to allow unfettered access to section 1983 claims solely because of a present inability to obtain habeas relief. *See id.* ("[W]hat *does* remain an open question, even in this Circuit, is perhaps even more difficult: whether *Heck* bars [section] 1983 suits when the plaintiff has intentionally defaulted his habeas claims. I know of no other circuit cases that allow [section] 1983 claims to proceed in such circumstances . . . ." (Calabresi, J., concurring)); *see also id.* (explaining a narrow exception "is the balance that . . . every other Circuit to recognize an analogous *Heck* exception[] have struck." (Livingston, J., concurring)). Indeed, "[t]he motivating concern in the *Spencer dicta*, [on which the exception is based,] was that circumstances beyond the control of a criminal defendant might deprive him of the opportunity to challenge a federal constitutional violation in federal court." *Poventud*, 750 F.3d at 163 (Jacobs, J., dissenting); *see also Heck*, 512 U.S. at 490 n.10 ("We think the principle barring collateral attacks — a longstanding and deeply rooted feature of both the common law and our own jurisprudence — is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."); John P. Collins, *Has All Heck Broken Loose? Examining Heck's Favorable-Termination Requirement in the Second Circuit After Poventud v. City of New York*, 42 Fordham Urb. L.J. 451, 501 (2014) ("*Jenkins, Leather*, *Green*, and *Huang* can all be read in a limited fashion that heeds the concerns expressed by Justice Souter in his *Heck* and *Spencer* concurrences while remaining within the bounds of *Heck's* majority holding.").

### iv.  Application of the *Jenkins/Leather* exception

In practice, the "*Jenkins/Leather*" exception appears to provide claimants two ways to avoid *Heck's* favorable-termination rule: (1) due diligence in pursuing habeas or similar relief; or

(2) too brief a period in custody to pursue habeas relief as a matter of law.

Under the first method, the emphasis on diligence or lack thereof suggests that the applicability of the exception should generally be determined on a case-by-case basis, in consideration of the specific circumstances involved. *See Teichmann*, 769 F.3d at 828 (Livingston, J., concurring). As to the second method, the Second Circuit has yet to establish a minimum period of time that is necessary for habeas relief to have been reasonably available as a matter of law for a claimant seeking damages under section 1983. *See id.* The Second Circuit has allowed section 1983 claims to proceed, despite failing to meet the favorable-termination requirement, where plaintiffs were never in custody or only had thirty days to seek habeas relief. *See Leather*, 180 F.3d at 424 (holding section 1983 damages claim may proceed where plaintiff was never in custody); *Jenkins*, 179 F.3d at 20–21 (holding section 1983 damages claim may proceed where plaintiff only had thirty days to bring a habeas claim); *Webster*, 271 F. Supp. at 470 (holding that a plaintiff that failed to seek habeas relief over two years could not avail himself of the "*Jenkins/Leather* exception"); *Sanders*, 2015 WL 7963135, at *5 n.2 ("Again, we note that we do not rely on *Heck* since plaintiff did not have the practical ability to pursue habeas relief from his thirty-day sentence."). In *Teichmann*, Judge Livingston suggested that a year may be at the outer limits of the exception. *See Teichmann*, 769 F.3d at 828 (Livingston, J., concurring).

### 1. Plaintiff's section 1983 claim necessarily implies the invalidity of his 2012 parole revocation

Plaintiff asserts that Jones violated his due process rights by allowing him to live at his family home where his wife was a resident, despite knowing that the living arrangement would almost assuredly result in a violation of the order of protection and consequently his conditions of parole. This claim necessarily implies that Plaintiff's resulting 2012 parole revocation was

invalid. Plaintiff is in effect arguing that Jones' failure to follow procedure resulted in him violating his parole conditions.

While *Heck* does not bar section 1983 damages claims based on a defendant's use of incorrect procedures that do not challenge whether a wrongful result was reached, the procedural defect challenged in this action — Jones' failure to ensure that the residence to which Plaintiff was paroled did not conflict with the conditions of release — necessarily implies the invalidity of the 2012 parole revocation. Plaintiff acknowledges that he "spent . . . 365 days in Greenburg Correctional Facility as a penalty for getting arrested and violating the order of protection *based on the fact that [Jones] said [he] could live at the residence . . . .*" (Compl. 6 (emphasis added)); *see also Harris v. City of New York*, No. 01-CV-6927, 2003 WL 554745, at *3 (S.D.N.Y. Feb. 26, 2003) (dismissing section 1983 claim because plaintiff challenged "the basis" for the parole revocation determination). By permitting Plaintiff to live in the same family home as his wife, in violation of the order of protection, Jones allegedly created the very basis for parole revocation. Stated differently, if Jones had properly investigated the living arrangements and the conflict with the existing order of protection, and had not permitted Plaintiff to live at his family home with his wife, there would have been no violation of parole.

Plaintiff's section 1983 damages claim necessarily implies the invalidity of his 2012 parole revocation. However, because Plaintiff has failed to demonstrate the invalidity of his parole revocation, (*see generally* Compl.), his section 1983 claim fails to meet *Heck*'s favorable-termination rule, *see Heck*, 512 U.S. at 487. Therefore, an exception to *Heck*'s favorable-termination rule must apply for Plaintiff to be able to proceed with his claim against Jones.

### 2. Plaintiff's claim does not meet the requirements of the *Jenkins/Leather* exception

An inmate's habeas challenge of his parole revocation becomes moot following

reinstatement to parole, absent a demonstration of collateral consequences.[10] *Spencer*, 523 U.S.

at 7. Because habeas petitions concerning parole revocations challenge the validity of

incarceration, a court has no recourse or remedy to offer an inmate who has been re-paroled;

once re-paroled, the habeas challenge becomes moot.[11] *See Witzke v. Brewer*, 849 F.3d 338, 340

(6th Cir. 2017) (holding re-release on parole mooted challenge to parole revocation); *Scott v.*

*Warden of Buena Vista Corr. Facility*, 453 F. App'x 837, 839 (10th Cir. 2012) (holding re-parole

mooted challenge to extension of parole revocation); *Kimberlin v. U.S. Parole Comm'n*, No. 03-

---

[10] If an inmate can demonstrate collateral consequences of his parole, his habeas challenge will not be moot because a court may be able to provide remedies beyond release from incarceration. Collateral consequences are the "'disabilities or burdens (which) may flow from'. . . [a] conviction," or in this case, a parole revocation. *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968). Where the challenge is to a wrongful conviction, courts presume collateral consequences. *Spencer*, 523 U.S. at 8. However, collateral consequences are not presumed for parole revocations. *See id.* at 7 ("The present petitioner, however, does not attack his convictions . . . , which he concedes were lawful; he asserts only the wrongful termination of his parole status. The reincarceration that he incurred as a result of that action is now over, and cannot be undone."); *Thurman v. Allard*, No. 01-CV-8746, 2004 WL 2101911, at *10 (S.D.N.Y. Sept. 22, 2004) ("The fact that [petitioner] is still incarcerated is important because while release on parole does not moot a challenge to a judgment of conviction, such release does render moot a challenge to a parole revocation hearing." (citations omitted)).

[11] Plaintiff's claim likely would not have fallen within the "capable of repetition, yet evading review" exception to the mootness doctrine. The "capable of repetition yet evading review" exception applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *N.Y.C. Dist. Council of N.Y.C. & Vicinity of the United Bhd. of Carpenters*, 709 F. App'x at 60, 63 (quoting *Kingdomware Techs. Inc. v. United Staets*, 579 U.S. ---, ---, 136 S. Ct. 1969, 1976 (2016)). Courts are hesitant to apply the exception where the action "capable of repetition," as here, requires future violations of the law. *See United States v. Corbin*, 620 F. Supp. 2d 400, 407 (E.D.N.Y. 2009); *Taylor v. Riverside Reg'l Jail Auth.*, No. 11-CV-456, 2011 WL 6024499, at *7 (E.D. Va. Dec. 2, 2011) ("Courts often find that no reasonable expectation exists when the plaintiff must engage in illegal behavior in order to be subjected to the challenged action again."); *see also Spencer*, 523 U.S. at 17–18 (holding that petitioner challenging his parole revocation failed to meet both requirements of the exception: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again" (citation and internal quotation marks omitted)).

CV-5017, 2004 WL 885215, at *1 (D.C. Cir. Apr. 22, 2004) (holding re-parole to have mooted appellant's challenges of the revocation of his parole and delay of his re-parole); *Watts v. Petrovsky,* 757 F.2d 964 (8th Cir.1985) (dismissing a challenge to parole revocation as moot when the petitioner was re-paroled after briefing of his case but prior to oral argument); *see also In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("[W]hen, during the pendency of an appeal, events occur that would prevent the appellate court from fashioning effective relief, the appeal should be dismissed as moot."). Therefore, habeas actions challenging the validity of parole revocations are not available after an inmate has been reinstated to parole.

Under the circumstances of this case, Plaintiff cannot avail himself of the *Jenkins/Leather* exception. Following his one-year of incarceration resulting from his 2012 parole revocation, Plaintiff was re-released on parole. Plaintiff therefore had a year to bring a habeas action before his claim would have become moot. *See also Teichmann*, 769 F.3d at 828 (Livingston, J., concurring) (explaining that "[n]o court has recognized an exception to *Heck's* bar" where the claimant "waited more than a year, until he was no longer in custody within the meaning of 28 U.S.C. § 2254, and filed a federal lawsuit seeking a declaration that his prior conviction was unconstitutional."). However, there is nothing in the record to suggest that Plaintiff even attempted to seek administrative or collateral relief including by a federal habeas petition as to his parole revocation during his year of reincarceration.

While a year to bring a habeas challenge to revocations of parole may be insufficient as a practical matter in many cases, the Court cannot hold that habeas relief under such circumstances is "*never* reasonably available" as a matter of law.[12] *Teichmann*, 769 F.3d at 828. Courts have

---

[12] Had Plaintiff filed a habeas challenge that was rendered moot through no fault of his own, (such as by being re-paroled), Plaintiff may have been able to demonstrate that section

also found periods of time shorter than a year sufficient to bring a habeas petition for a parole revocation. *See, e.g.*, *Calderon v. Allen*, No. 12-CV-01432, 2012 WL 2863250, at *1 (D. Colo. July 11, 2012) (dismissing section 1983 claims where parole was revoked on the first occasion for 180 days); *Quintana v. Gates*, No. 07-CV-07166, 2004 WL 1661540, at *1 (C.D. Cal. July 20, 2004) (dismissing section 1983 claims where parole was revoked for 176 days). This conclusion is also supported by the requirement that habeas challenges must be brought within a year of the parole revocation, subject to exceptions, to be timely. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 280–81 (2d Cir. 2003) (holding statute of limitations on a habeas challenge to parole revocation accrued when administrative decision to revoke parole became final). Thus, Plaintiff's failure to pursue any administrative or collateral relief precludes the applicability of the exception to *Heck*. *Cf. Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 198 (4th Cir. 2015) (remanding to district court to determine whether plaintiff had "actually pursued or was practicably able to pursue habeas relief" for period lasting a little over a year); *Harrison v. Michigan*, 722 F.3d 768, 774 (6th Cir. 2013) (holding eighteen months was sufficient time for plaintiff to have pursued habeas relief); *Wilson v. Johnson*, 535 F.3d 262, 268 (4th Cir. 2008) (holding *Heck* did not bar a section 1983 claim where plaintiff only had four months to meet the favorable-termination requirement); *see also Bishop v. Cty. of Macon*, 484 F. App'x 753, 755 (4th Cir. 2012) (implying *Wilson*'s holding was dependent on the fact that the plaintiff had attempted to meet the favorable-termination requirement until his release).[13]

---

1983 was his only opportunity to challenge his parole revocation in a federal forum. The same principle may also have applied had Plaintiff been delayed in filing a federal habeas petition due to the need to exhaust state court remedies. *See Wilson v. Johnson*, 535 F.3d 262, 268 n.8 (4th Cir. 2008).

[13] As Judge Livingston recognized, the Fourth and Sixth Circuit, among others, have "recognize[d] an analogous *Heck* exception." *Teichmann*, 769 F.3d at 828.

### c. Plaintiff's claim is time-barred

Defendant argues that even if *Heck* does not bar Plaintiff's claim, the three-year statute of limitations for section 1983 claims expired prior to Plaintiff filing this action. (*See* Def. Mem. 5–6.)

The statute of limitations for section 1983 claims brought in a federal court in New York is three years from the date the underlying constitutional violation occurred. *See Smith v. Campell*, 782 F.3d 93, 100 (2d Cir. 2015). However, the Supreme Court has modified this rule for section 1983 damages claims based on unconstitutional convictions or sentences. *See Heck*, 512 U.S. at 489–90. In these cases, the claims "do[] not accrue until the conviction or sentence [or parole revocation] has been invalidated." *Id.*; *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *5 (S.D.N.Y. Dec. 29, 2010) (holding plaintiff's section 1983 claim accrued after the invalidation of his parole sentence). The Second Circuit has yet to address how these accrual principles apply when a section 1983 damages claim implicating the *Heck* bar is allowed to proceed where the underlying criminal conviction or parole revocation has not been invalidated. *But see Teichmann*, 769 F.3d at 828 (explaining no court has recognized an exception to *Heck* where a plaintiff filed a section 1983 claim more than a year after no longer being in custody for purposes of habeas) (Livingston, J., concurring).

Consistent with general principles of accrual for section 1983 damages claims based on unconstitutional convictions or sentences, the Court holds that the statute of limitations accrues for exceptions to *Heck*'s favorable-termination rule when habeas is no longer available. As discussed above, section 1983 damages claims based on unconstitutional convictions or sentences accrue when the underlying conviction, sentence, or parole revocation has been invalidated — when the *Heck* bar *is lifted*. *See Whitfield v. Howard*, 852 F.3d 656, 658 (7th Cir. 2017) (noting that the "statute of limitations does not begin to run until [the] *Heck* bar lift[s]");

*Savory v. Cannon*, No. 17-CV-204, 2017 WL 5971999, at *3 (N.D. Ill. Dec. 1, 2017)

("[Plaintiff] could no longer seek federal habeas relief, and because [Plaintiff] could no longer

seek habeas relief as of the termination of his parole on December 6, 2011, [Plaintiff's section]

1983 claims accrued on that date . . ."). In other words, accrual begins when the section 1983

claim becomes available. Likewise, accrual under the *Jenkins/Leather* exception should begin

when the section 1983 claim becomes available — once habeas is no longer available, despite

due diligence.[14]

Under the above principles, Plaintiff's section 1983 claim against Jones for his 2012

parole revocation is time-barred, even if the *Jenkins/Leather* exception had applied. For

Plaintiff's 2012 parole revocation, the latest the statute of limitations would begin to accrue

would have been March 17, 2013, the date of his release from the parole revocation — the date a

habeas claim would have become moot despite due diligence. Therefore, had Plaintiff pursued

his habeas relief diligently, he would have had three years from March 17, 2013 to bring his

claim. However, Plaintiff filed his section 1983 claim on June 2, 2016, more than three years

after March 17, 2013. Therefore, Plaintiff's section 1983 claim against Jones is time-barred. *See*

*Williams v. Lynaugh*, No. 85-CV-4548, 1987 WL 30238, at *1 (E.D.N.Y. Dec. 3, 1987)

(dismissing *pro se* plaintiff's section 1983 claims because he filed his complaint a little more

than three weeks after the statute of limitations expired); *Daniels v. Doe*, No. 99-CV-2192, 1999

WL 1211824, at *3 (S.D.N.Y. Dec. 17, 1999) (dismissing *pro se* plaintiff's section 1983 claims

because he filed his complaint six weeks after the statute of limitations expired); *see also Arnold*

---

[14] This principle would apply even if the Court followed the interpretation that section 1983 claims are available whenever habeas is unavailable. *See, e.g., John v. Lewis*, No. 15-CV-5346, 2017 WL 1208428, at *7 (E.D.N.Y. Mar. 31, 2017). Under that interpretation, section 1983 claims would be available when the claimant was no longer in custody — when the *Heck* bar had lifted.

*v. Mayal Realty Co.*, 299 N.Y. 57, 60 (1949) ("A Statute of Limitations is not open to discretionary change by the courts, no matter how compelling the circumstances").

Because Plaintiff's claim is barred by *Heck* and the statute of limitations, the Court dismisses Plaintiff's claims against Jones with prejudice. The Court finds that amendment would be futile under the circumstances. *See Webster*, 271 F. Supp. 3d at 471 (denying *pro se* plaintiff leave to amend a section 1983 claim for futility because of failure to meet the *Heck* requirements); *Cruz v. Reilly*, No. 08-CV-1245, 2009 WL 2567990, at *7 (E.D.N.Y. Aug. 18, 2009); ("[T]he *Heck* rule bars [a] plaintiff's claims until the underlying conviction is invalidated, and thus providing the plaintiff with an opportunity to amend the complaint is futile until such time that the state court conviction is reversed, invalidated by a federal writ of habeas corpus, or otherwise expunged or declared invalid.").

### III. Conclusion

For the foregoing reasons, the Court dismisses Plaintiff's claim against Defendant Jones with prejudice.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  February 26, 2018
        Brooklyn, New York